UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

In re:

DONALD ANDERSON,

      Debtor.

Case No. 04-11437-RGM
(Chapter 11)

### MEMORANDUM OPINION

This case is before the court on a Complaint filed in this bankruptcy case by Charles M. Anderson[1] on August 31, 2005 (Docket Entry 497) and two addenda.[2] The Complaint states that it is against Martha Davis, an attorney in the United States Trustee's Office, Dennis Early, the Assistant United States Trustee, and the presiding judge. Neither the Complaint nor any of the addenda was ever set for hearing.[3] In reviewing the documents, they do not appear to state any claim against Ms. Davis or Mr. Early or seek relief against them. The Complaint will be dismissed as to them[4]. The only relief requested is for the presiding judge to recuse himself.

---

[1] Dr. Anderson, a professional engineer, is the debtor's father.

[2] Addendum No. 2 filed September 23, 2005 (Docket Entry 590); and Addendum No. 3 filed October 11, 2005 (Docket Entry 665).

[3] The Complaint, the exhibits and the addenda are voluminous and comprehensive. They fully address Dr. Anderson's arguments and concerns. In light of the comprehensive nature of them and Dr. Anderson's failure to request a hearing, the court will rule on the papers presented.

[4] Dr. Anderson's request at the end of the Complaint is:

"THE DEMAND IS OBVIOUS: **STOP IT!**

"STAY THE SEPTEMBER 8, 2005 HEARING DATE UNTIL THE APPROPRIATE INQUIRY CAN BE MADE INITIALLY AT THE LOWEST LEVEL TOWARD ESTABLISHING THE TRUTH OF THE MATTERS RECORDED IN THIS COMPLAINT AND ALL RELEVANT ATTACHMENTS. THEREUPON JUDGE MAYER WOLD RECUSE HIMSELF, THE RECORD

(continued...)

### Nature of the Case

Donald Anderson filed a voluntary petition in bankruptcy under chapter 11 of the United States Bankruptcy Code on March 31, 2004. He scheduled, among other assets, real estate which he valued at $495,000. He listed secured claims of $3,100, and unsecured nonpriority claims of $354,240.83. The real estate consisted of two properties, a lot he valued at $10,000 and a single family home under construction he valued at $485,000. The two secured creditors were listed as secured by deeds of trusts against the single family home. The first deed of trust was scheduled with a claim of $2,000. The second deed of trust was scheduled with a claim of $1,100 in favor of the debtor's father. Sixty-three unsecured creditors were scheduled with claims totaling $354,240.83. Almost all appear to be related to supplying labor or material for the construction of the single family home. Fifty-seven are listed as disputed. Twenty-one suits are listed on the Statement of Financial Affairs. All appear to relate to the construction of the single family house. The debtor objected to almost all proofs of claims filed for work or materials supplied in connection with the construction of the house. The objections generally relied on one or more of three defenses: the claimant did not have a contractor's license as required by the Virginia Code; the claim is barred by the statute of limitations; or there is a problem with the work or material supplied. An unsecured creditors committee was formed and retained Kevin M. O'Donnell as counsel. In addition, many of the claimants are individually represented by Gordon Gay.

---

[4](...continued)
OF WRONG-DOING WOULD BE DEDACTED IN CASE NO. 04-11437-RGM, THE MATTER WOULD BE FORWARDED TO THE U.S. ATTORNEY GENERAL FOR APPROPRIATE ACTION, AND THE CASE WOULD MOVE FORWARD ON FAIR AND IMPARTIAL BASIS FOR TRIALS AS INITIALLY REQUESTED BY DEBTOR ON THE FACTS, THE LAW, THE TRUTH, AND DUE PROCESS WITH ALL FEES VOIDED AND OF NO EFFECT."

Complaint, at 21.

Martha Davis, an attorney advisor in the United States Trustee's Office, filed a motion to appoint a chapter 11 trustee or convert the case to a case under chapter 7 on August 16, 2004. The motion to appoint a chapter 11 trustee was granted after a hearing and Kevin R. McCarthy was appointed chapter 11 trustee on November 11, 2004.

The debtor's and Dr. Anderson's theory of the case is that the debtor is not liable for the debts and that the house is not subject to mechanics' liens for the labor and material supplied in constructing it. They assert that Dr. Anderson, a professional engineer, was retained by Donald Anderson, his son, as general contractor to build the house. All of the contracts for labor and materials were with Dr. Anderson, not his son, and the debtor has paid Dr. Anderson the entire agreed upon fee. Since there is no privity of contract, the debtor is not liable on the debts.[5] Since the general contractor has been paid in full, subcontractors and materialmen have no mechanics' lien rights. While this leaves Dr. Anderson solely liable for the debts, he received a chapter 7 discharge in a case filed in this court on May 14, 2002. *In re Charles M. Anderson,* Bankr.E.D.Va., Case No. 02-82364-RGM.

---

[5]Dr. Anderson states:

"(16) EVERYBODY FROM THE BEGINNING KNOWS THE CASE IS ABOUT THE CLEAR ISSUE OF PRIVITY AND THAT THE LAW SAYS THAT ONE WHO HAS NOT CONTRACTED OWES NOTHING BUT FOR THE POSSIBILITY OF FRAUD BUT THEY DON'T EVEN BOTHER PLEADING FRAUD CORRECTLY (NOTICE PLEADING), HAVE NO EVIDENCE OF IT, AND FINALLY AT TRIAL ON 9/23/05 PRESENT NOTHING OF IT."

Addendum No. 3, ¶16 at 20. (Docket Entry 665).

"(6) MASSELLI HAD DEBTOR SO SCARED AND PRESSURED WITH SHORTNESS OF TIME AND THREAT OF JAIL AND QUITTING ON HIM THAT HE COERCED DEBTOR TO ALLOW HIM TO SETTLE EVERYTHING FOR ALMOST FULL PAYMENT AND DEFEND NOTHING WHEN DEBTOR'S EXCELLENT FACTS, LAW, DEFENSES, AND RIGHTS DICTATED THAT DEBTOR COULD KEEP HIS HOUSE AND PAY NOTHING AND GET ALL FEES AND EXPENSES QUASHED!"

David C. Masselli is debtor's counsel. Addendum No. 3, ¶6 at 23. (Docket Entry 665).

**Sale of House**

On March 22, 2005, the debtor filed a motion requesting that the house be sold to him free and clear of all liens and interests for $499,000.[6] (Docket Entry 142). The chapter 11 trustee filed his own motion to sell the house on April 15, 2005. (Docket Entry 260). He proposed selling the house to the debtor for $489,000 or to a third party for $700,000. He stated that the appraised value was $685,000. The debtor objected and filed an appraisal dated April 2, 2005, with an appraised value of $875,000. (Docket Entry 263). The Unsecured Creditors Committee objected to the sale to the debtor, not because it was to the debtor, but because the proceeds were not sufficient to pay all creditors in full.[7] (Docket Entry 261). Ms. Davis, for the United States Trustee, also responded to the motions and urged that the third-party contract be accepted. The debtor withdrew his motion. (Docket Entry 321). The trustee subsequently submitted two additional contracts, one for $800,000 which was withdrawn and one for $775,000 which was approved by an order entered on August 11, 2005. The sales price was modified to $773,000. (Docket Entry 478).

The debtor's objections to the proofs of claims were consolidated for trial because of the common issues. The initial trials were set for September 8, 2005, but continued to September 23, 2005. At the hearing, the debtor, the Unsecured Creditors Committee and the individual creditors settled many of the objections. A few were tried. Those that were settled are set for a hearing on October 25, 2005 on approval of the proposed settlements.

---

[6]The debtor stated that there were 17 mechanics' liens and two small deeds of trusts.

[7]On April 1, 2005, the debtor objected to almost all filed proofs of claims. Proofs of claims are not required to be filed in a chapter 11 case unless the claim is scheduled as disputed. In this case, almost all claims were scheduled as disputed.

The debtor never filed a chapter 11 plan or presented a loan commitment that would have enabled him to purchase the house at the fair market price. A lesser price – sufficient to clearly pay all creditors in full and all administrative expenses – was considered but the debtor was unable to present a loan commitment that would have enabled him to purchase the house at such a price. One difficulty was evaluating the amount necessary to pay all creditors. The house was close to completion. It was not occupied.

## **Discussion**

Dr. Anderson's request that the presiding judge recuse himself falls under 28 U.S.C. §455. Section 455 provides in relevant part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.
>
> (b) He shall also disqualify himself in the following circumstances:
>
>> (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . .

The purpose of Section 455 is to preserve the public's trust and confidence in the judicial process. Not only must the court be impartial, but it must appear to be impartial. This does not mean that every complaint must result in recusal. Recusal motions cannot be a means to manipulate the judicial process for strategic purposes, such as obtaining a judge more to the liking of a litigant. Types of complaints that do not generally result in recusal are adverse rulings or expressions of opinion by the court; rumor, suspicion or innuendo; rulings in prior or related cases; mere familiarity

with the parties; baseless personal attacks on the judge by a party; or threats or other attempts to intimidate a judge. In this case, none of the complaints go beyond these.

All of the information available to the court became available through the regular court proceedings in this case. There was no other source of information. Dr. Anderson asserts that the evidence was tainted by lies and dishonesty. These statements are, at best, mere suspicion. All evidence was taken in open court and all parties in interest had the opportunity to present their own evidence to support their own case or to impeach another party's case. Nothing has been shown that supports the allegation that the evidence was tainted.

All rulings were based on the evidence presented and the arguments made. Clearly, Dr. Anderson whose financial stake in the case will be paid in full in any event is unhappy with the result of the case, that is, that his son will lose the house he built. That is a regrettable outcome. But, the debtor had ample opportunity to file his own chapter 11 plan or to purchase the house from the trustee. He never filed a chapter 11 plan and was unable to obtain financing to accomplish the latter. Of course, all funds not necessary to pay the creditors and the administrative expenses of the case will be turned over to him.

The only matter related to this case that was not a part of this case, is Dr. Anderson's prior bankruptcy. That case was filed on May 14, 2002 and closed on March 4, 2003. It was assigned to the same judge. However, it was a routine no-asset chapter 7 case. The bankruptcy case never appeared on the court's docket. The only order entered in the bankruptcy case was the standard order to the debtor entered by the clerk. A nondischargeability complaint was filed. *W. R. Cannon, Inc. v. Charles M. Anderson,* Bankr.E.D.Va. Adv.Proc. 02-8165. That matter was dismissed on Dr.

Anderson's motion because the complainant, a corporation, was not represented by counsel. Neither the proceedings in his bankruptcy nor the adversary proceeding have any relevance to his son's case.

### Conclusion

There is no personal bias or prejudice concerning any party in this case or personal knowledge of disputed evidentiary facts concerning the proceeding. A reasonable person would not conclude that the presiding judge's impartiality could reasonably be questioned. The motion will be denied.

Alexandria, Virginia
October 18, 2005

/s/ Robert G. Mayer
Robert G. Mayer
United States Bankruptcy Judge

copies to:

Martha Davis
Dennis Early

Charles M. Anderson
11448 Harton Street
Manassas, Virginia 20112

Anderson